DECISION
{¶ 1} Relator, Manuel P. Wheeler, filed this original action in mandamus. Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals, the matter was referred to a magistrate of this court. On October 6, 2003, the magistrate rendered his decision, including findings of fact and conclusions of law, wherein he recommended denial of the writ. (Attached as Appendix A.) Relator timely filed objections to the magistrate's decision, which objections are now before the court.
 {¶ 2} In 1991, relator sustained two separate injuries in the course and scope of his employment with respondent, Cardinal Foods. His claims have been allowed for several physical conditions as well as for post-traumatic stress disorder. Respondent, Industrial Commission of Ohio ("the commission") denied relator's March 7, 2002 application for permanent total disability ("PTD") compensation. In so doing, the commission relied upon the reports of Drs. Stanko and Greer, and commission vocational evaluator, Ms. Harris. Relator's complaint seeks a writ of mandamus to compel the commission to vacate its order denying his PTD application, and to enter a new order granting same.
 {¶ 3} In support of his request for this extraordinary writ, relator first argues that the commission was required to evaluate the combined effects of all of relator's allowed conditions, and the commission failed to do so. He directs our attention to the fact that Dr. Stanko's report deals with relator's allowed physical conditions, while Dr. Greer's report deals with relator's allowed psychological condition. Each expert found relator has the capacity for sustained remunerative employment. Ms. Harris opined, based upon the reports of Drs. Stanko and Greer, that relator was capable of performing several different jobs. Relator argues that the commission was required to perform its own analysis of the combined effects of all of relator's allowed conditions, and, before denying PTD compensation, ensure that the jobs suggested by Ms. Harris would be compatible with the limitations corresponding to all allowed conditions, taking into account their combined effects.
 {¶ 4} In his decision, the magistrate's discussion of this issue focused on a line of cases dealing with whether the commission is permitted to rely on expert reports that themselves do not include a so-called "combined effects analysis." In his first objection to the magistrate's decision, relator argues that the magistrate should have begun with the premise that the commission is required to perform its own combined effects analysis using the reports upon which it relies, and further should have concluded that the commission failed to do so in the present case, requiring issuance of a writ of mandamus.
 {¶ 5} To deny PTD compensation without considering all relevant allowed conditions is an abuse of discretion for which mandamus is the remedy. State ex rel. Johnson v. Indus. Comm.
(1988), 40 Ohio St.3d 339; State ex rel. Jackson v. Indus.Comm. (1997), 79 Ohio St.3d 266; State ex rel. Roy v. Indus.Comm. (1996), 74 Ohio St.3d 259; State ex rel. Lemon v. TheW.M. Brode Co. (June 23, 1992), Franklin App. No. 91AP-1037. Furthermore, the commission's order must indicate that all the claimant's allowed conditions were considered on the question of PTD compensation. Lemon, supra, citing Johnson, supra, andState ex rel. Cupp v. Indus. Comm. (1991), 58 Ohio St.3d 129. The magistrate did not include a discussion of these precedents in his conclusions of law; however, they are clearly relevant to relator's request for a writ of mandamus. Thus, in adopting the magistrate's conclusions of law, we add the foregoing authorities to them.
 {¶ 6} We now evaluate whether, pursuant to these authorities, the commission abused its discretion by wholly failing to take into account all of relator's allowed conditions in passing upon his PTD application. Upon a careful reading of the commission's order, we find that the commission took full account of all of relator's allowed conditions, and their combined effects, in denying his PTD application. The staff hearing officer ("SHO") discussed in detail the allowed physical conditions upon which Dr. Stanko's report is based, and also provided detailed summaries of the reports of Dr. Greer and Ms. Harris. The SHO then wrote, "* * * the claimant is vocationally capable of numerous employment options in consideration of the allowed physical and psychological residual functional capacities as defined by Dr. Stanko and Greer, as well as Dr. Hard."[1]
The SHO noted that she had "thoroughly review[ed] all the evidence" and noted of particular significance the fact that relator worked through the year 1996, even though his claim had been allowed for post-traumatic stress disorder.
 {¶ 7} We find the commission's order clearly articulates that it analyzed the combined effects of all of relator's allowed conditions. The commission then found that relator is capable of sustained remunerative employment performing specific jobs that fit within the limitations imposed upon him by both his physical and psychological allowed conditions. The evidence the commission relied upon — namely, the reports of Drs. Stanko and Greer, and Ms. Harris — constitutes some evidence upon which the commission based its decision.
 {¶ 8} In relator's second objection to the magistrate's decision, he argues the magistrate erred in concluding that the commission's rejection of Helen Lewinsky's vocational report was not an abuse of its discretion. The commission's order reflects that this report was rejected because it is based in part on non-allowed conditions. Relator argues that, pursuant to our decision in State ex rel. Caraustar Indus., Inc. v. Indus.Comm., 2003-Ohio-5209, so long as an opinion contained in an expert report is based expressly on allowed conditions alone, mere reference to non-allowed conditions does not compel the exclusion of the report. We agree with the magistrate's conclusion that Lewinsky's report does not merely refer to non-allowed conditions, but is based, in part, upon them. InState ex rel. Waddle v. Indus. Comm. (1993), 67 Ohio St.3d 452, the Supreme Court of Ohio held that non-allowed conditions cannot be used to advance a claim for PTD compensation. Thus, pursuant to Waddle, the Lewinsky report was properly excluded from the commission's consideration.
 {¶ 9} After an examination of the magistrate's decision, an independent review pursuant to Civ.R. 53, and due consideration of relator's objections, we overrule the objections for the foregoing reasons. We adopt the magistrate's findings of fact and conclusions of law, and supplement them with our own findings and conclusions as articulated herein, and deny relator's request for a writ of mandamus.
Objections overruled; writ denied.
Lazarus, P.J., and Klatt, J., concur.
 MAGISTRATE'S DECISION IN MANDAMUS {¶ 10} In this original action, relator, Manuel P. Wheeler, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation and to enter an order granting said compensation.
 Findings of Fact {¶ 11} 1. Relator has sustained two industrial injuries while employed as a truck driver for respondent Cardinal Foods, Inc. On June 20, 1991, relator fell from a truck. The industrial claim is allowed for: "fracture coccyx; sacral contusion; lumbar spinal stenosis at L5," and is assigned claim number 91-18038.
 {¶ 12} 2. On September 4, 1991, relator was involved in a motor vehicle accident. The industrial claim was allowed for: "left fractured 11th and 12th ribs; hematoma left inside thigh; post traumatic stress disorder," and is assigned claim number 91-29935.
 {¶ 13} 3. On March 7, 2002, relator filed an application for PTD compensation. In support, relator submitted a report, dated February 8, 2002, from Wesley F. Hard, M.D., who opined that "[t]here is no type of gainful employment that he is able to engage in." Dr. Hard further wrote:
 {¶ 14} * * * He can only stand or walk for about 10 minutes at a time. He can sit fine, he isn't limited there. He can only lift 20 pounds maximum. He can only bend or twist for about 25 minutes before he has to stop. * * *
 {¶ 15} 4. In further support of his PTD application, relator submitted a report, dated February 22, 2002, from clinical psychologist Donald J. Tosi, Ph.D., who opined that relator is "permanently and totally disabled from a psychological standpoint."
 {¶ 16} 5. On May 16, 2002, relator was examined at the commission's request by Robin G. Stanko, M.D. Dr. Stanko wrote:
 {¶ 17} * * * From my examination and review of the file including treatments rendered for this condition, it is my opinion that this claimant has reached maximal medical improvement and that the condition has become permanent. Based on the AMA Guides to the Evaluation of Permanent Impairment, FourthEdition, in my opinion, the impairments of the claimant place him in DRE lumbosacral category II, using Table 70 (page 108); giving him a permanent impairment of 5% whole person for the allowed musculoskeletal conditions in this claim. I feel the claimant could perform activity at sedentary work levels, that is lifting up to 10 lb.
 {¶ 18} 6. Dr. Stanko also completed a physical strength rating form on which he opined that relator is capable of "sedentary work."
 {¶ 19} 7. On May 16, 2002, relator was examined at the commission's request by psychologist Earl F. Greer. Mr. Greer wrote:
 {¶ 20} * * * His degree of permanent emotional impairment due to his industrial accident on 9-4-1991, and referenced by the AMA Guide to Permanent Impairments (4th and 2nd Editions); is presently estimated at Class II/15%.
 {¶ 21} * * * The degree of emotional impairment from his industrial accident on 9-4-1991 would currently not be expected to solely prevent him from returning to his former position of employment. Work would be expected to be therapeutic, enhancing self-worth; and with significant unstructured time psychologically unhealthy. Motivation is expected to be a significant factor.
 {¶ 22} 8. Mr. Greer completed an occupational activity assessment form. The form asks the examining psychologist to respond to the following two queries:
 {¶ 23} Based on the impairment resulting from the allowed/alleged psychiatric/psychological condition(s) only, can this claimant meet the basic mental/behavioral demands required?
 {¶ 24} [1] To return to any former position of employment?
 {¶ 25} [2] To perform any sustained remunerative employment?
 {¶ 26} Mr. Greer answered both queries in the affirmative.
 {¶ 27} 9. The commission requested an employability assessment report from Vanessa Harris, a vocational expert. The Harris report, dated June 18, 2002, responds to the following query:
 {¶ 28} * * * Based on your separate consideration of reviewed medical and psychological opinions regarding functional limitations, which arise from the allowed condition(s), identify occupations which the claimant may reasonably be expected to perform, (A) immediately and/or; (B) following appropriate academic remediation, or brief skill training.
 {¶ 29} Indicating acceptance of Dr. Hard's physical restrictions and responding to the above query, Harris listed the following "employment options" that relator can perform immediately:
 {¶ 30} * * * Small products assembler II, Microfilm Processor, Marker II Garment Sorter, Injection Mold Machine Tender, Blow Mold Machine Tender. * * *
 {¶ 31} Indicating acceptance of the reports of Dr. Stanko and responding to the above query, Harris listed the following "employment options" that relator can perform immediately:
 {¶ 32} * * * Type copy examiner, Table Worker, Addresser, Bench Hand, Toy Stuffer, Nut Sorter[.] * * *
 {¶ 33} Harris also listed "receptionist" as an employment option that relator could perform following appropriate academic remediation.
 {¶ 34} Indicating acceptance of Mr. Greer's report and responding to the above query, Harris listed the following "employment options":
 {¶ 35} * * * Truck Driver Heavy [and all jobs listed for Dr. Hard's report.]
 {¶ 36} 10. The record also contains a report from Helen Lewinsky, dated August 26, 2002, captioned "Initial Rehabilitation Assessment." Apparently, Lewinsky was the "vocational case manager" assigned to relator's industrial claim. The Lewinsky report states:
 {¶ 37} * * * Unrelated medical conditions/previous workers' com-pensation claims:
 {¶ 38} * * * Mr. Wheeler has a Worker's [sic] compensation claim with Cardinal Foods dated 09-04-1991 (claim #91-29935) in which the injured worker was cut off the road by another driver and ran his truck into a house where a family with young children were sleeping. The physical component of the injury healed, but the claimant developed severe anxiety and Post Traumatic Stress disorder.
 {¶ 39} * * * Mr. Wheeler has Carpal Tunnel in his left hand
 {¶ 40} * * * Mr. Wheeler has gained 100 lbs. since 1996.
 {¶ 41} * * * Mr. Wheeler has Type 2 Diabetics.
 {¶ 42} * * * Mr. Wheeler had a Heart Attack in 1996 and two stents put in the arteries in 2000.
 {¶ 43} * * * Mr. Wheeler has PTSD and is Agorophobic.
 {¶ 44} * * * Mr. Wheeler has substantial sleep disturbances and nightmares.
 {¶ 45} * * * Limitations caused by unrelated condition(s) in-cluding medication use:
 {¶ 46} * * * Mr. Wheeler is afraid to leave the house due to anxiety.
 {¶ 47} * * * Mr. Wheeler takes anxiety and narcotic medication in which he will be unable to drive.
 {¶ 48} * * * Mr. Wheeler suffers with Obesity.
 {¶ 49} * * * Mr. Wheeler has been having difficulty with short term memory.
 {¶ 50} * * * Mr. Wheeler has substantial sleep disturbances related to anxiety.
 {¶ 51} * * * Mr. Wheeler is unable to drive due to pain and anxiety.
 {¶ 52} * * * Mr. Wheeler takes 13 medications per day related to his heart, diabetics, PTSD, and allowed condition.
 {¶ 53} At the conclusion of her report, Lewinsky indicates that vocational rehabilitation is not "feasible" because "[t]here are too many barriers related to his allowed and unrelated conditions."
 {¶ 54} 11. Following an October 1, 2002 hearing, a staff hearing officer ("SHO") issued an order denying relator's PTD application. The order states reliance on the reports of Dr. Stanko, Mr. Greer and Ms. Harris. The order also explains why the SHO did not rely upon the Lewinsky report:
 {¶ 55} * * * That report indicates that the injured worker is not a feasible candidate for vocational rehabilitation. However, the Staff Hearing Officer notes that this is based on partly non-related conditions, and therefore is not found persuasive. * * *
 {¶ 56} 12. On February 6, 2003, relator, Manuel P. Wheeler, filed this mandamus action.
 Conclusions of Law {¶ 57} Two issues are presented: (1) whether the commission was required to evaluate the so-called "combined effect" of the allowed conditions of the two industrial claims; and (2) whether the commission abused its discretion by rejecting the Lewinsky report.
 {¶ 58} The magistrate finds: (1) the commission was not required to evaluate the "combined effect" of the allowed conditions of the two industrial claims; and (2) the commission did not abuse its discretion by rejecting the Lewinsky report. Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 59} The first issue is easily answered. Citing State exrel. Stroup v. Indus. Comm. (1984), 11 Ohio St.3d 179, relator contends that the commission was required to evaluate the "combined effects" of all the allowed conditions of the two industrial claims.
 {¶ 60} In State ex rel. Anderson v. Indus. Comm. (1980),62 Ohio St.2d 166, the court held that the commission, when determining whether a claimant is PTD, cannot admit an examining physician's report as evidence where the examining physician has not evaluated the combined effect of all conditions for which workers' compensation benefits have been allowed.
 {¶ 61} In Stroup, supra, the court applied the evidentiary doctrine announced in Anderson.
 {¶ 62} In State ex rel. Burley v. Coil Packing, Inc.
(1987), 31 Ohio St.3d 18, the court overruled Anderson. InBurley, the court reasoned that the practical application of the Anderson evidentiary doctrine had ultimately undermined the adjudicatory function of the commission.
 {¶ 63} In short, relator's invocation of the Anderson
evidentiary doctrine lacks merit.
 {¶ 64} The second issue is also easily answered. In State exrel. Waddle v. Indus. Comm. (1993), 67 Ohio St.3d 452, it was held that non-allowed medical conditions cannot be used to advance or defeat a claim for PTD compensation. As the SHO correctly points out in the order, Lewinsky's conclusion that vocational rehabilitation is not feasible is based in part upon relator's multiple non-allowed medical conditions. For example, the report states that relator had a heart attack in 1996, and he received two arterial stents in 2000. It also states that relator has "Type 2 Diabetics." These are clearly references to non-allowed medical conditions.
 {¶ 65} In short, the commission stated a valid basis for rejecting the Lewinsky report.
 {¶ 66} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
[1] Dr. Hard is relator's treating physician of record.